**LEE LITIGATION GROUP, PLLC**
C.K. Lee, Esq.
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: (212) 465-1188
Fax: (212) 465-1181
*Attorneys for Plaintiff, FLSA Collective Plaintiffs,*
*and the Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

_____

DARREN SANDERS,
*on behalf of himself, FLSA Collective Plaintiffs,*
*and the Class,*                                                      Case No.:

                                        Plaintiff,            **CLASS AND**
                                                              **COLLECTIVE ACTION**
                                                              **COMPLAINT**

        v.
                                                              **Jury Trial Demanded**

TR CHICAGO MANAGEMENT LLC
        d/b/a CHICAGO ATHLETIC ASSOCIATION HOTEL,
JOIE DE VIVRE HOSPITALITY, LLC
        d/b/a CHICAGO ATHLETIC ASSOCIATION HOTEL
HYATT HOTEL CORPORATIONS,
and JOHN DOE CORPORATIONS 1-100,

                                        Defendants.

_____

        Plaintiff DARREN SANDERS ("Plaintiff" or "Plaintiff SANDERS"), on behalf of himself

and others similarly situated, by and through his undersigned attorneys, hereby files this Class and

Collective Action Complaint against Defendants TR CHICAGO MANAGEMENT LLC d/b/a

CHICAGO ATHLETIC ASSOCIATION HOTEL, JOIE DE VIVRE HOSPITALITY, LLC d/b/a

CHICAGO ATHLETIC ASSOCIATION HOTEL, HYATT HOTEL CORPORATIONS, and

JOHN DOE CORPORATIONS 1-100 ("Defendants" or "Corporate Defendants"), and states as

follows:

1

## INTRODUCTION

1.      Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§201 *et. seq.* ("FLSA"), that he and FLSA Collective Plaintiffs are entitled to recover from Defendants: (1) unpaid wages, including overtime, due to time shaving; (2) reimbursement for tools of the trade maintenance; (3) illegally retained gratuities; (4) liquidated damages; and (5) attorneys' fees and costs.

2.      Plaintiff alleges that, pursuant to the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115, he and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including minimum wages and overtime, due to an invalid tip credit; (2) unpaid wages, including overtime, due to time shaving; (3) reimbursement for uniforms; (4) illegally retained gratuities; (5) statutory penalties; (6) liquidated damages; and (7) attorneys' fees and costs.

3.      Plaintiff further alleges that, pursuant to Illinois Human Rights Act ("IHRA"), 775 ILCS 5/1-101, he is entitled to recover from Defendants for racial discrimination: (1) back pay; (2) front pay; (3) compensatory damages; (4) punitive damages; and (5) attorneys' fees and costs.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337, and has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

5.      Venue is proper in the Northern District pursuant to 28 U.S.C. § 1391.

## PARTIES

6.      Plaintiff SANDERS is a resident of Cook County, Illinois.

7. Defendants jointly operate a chain of Hyatt branded hotels throughout Chicago, Illinois. *See* **Exhibit A – Hyatt Hotels in Chicago, Illinois.** The Hyatt Hotels in Chicago are located at:

a. Chicago Athletic Association: 12 S Michigan Avenue, Chicago, IL 60603;

b. Hyatt Centric The Loop Chicago: 100 W. Monroe Street, Chicago, IL 60603;

c. Hyatt Place Chicago Downtown River North: 66 West Illinois Street, Chicago, IL 60654;

d. Hyatt Place (Chicago/Wicker Park): 1551 West North Avenue/Ashland, Chicago, IL 60622;

e. Hyatt Place (Chicago/Downtown -The Loop): 28 North Franklin Street, Chicago, IL 60606;

f. Hyatt Regency McCormick Place: 2223 South Dr. Martin Luther King Jr. Drive, Chicago, IL 60616;

g. Hyatt Centric Chicago Magnificent Mile: 623 North Saint Clair Street, Chicago, IL 60611;

h. Hyatt House Chicago West Loop/Fulton Market: 105 N Mary St, Chicago, IL 60607;

i. Thompson Chicago Hotel: 21 East Bellevue Place, Chicago, IL 60611;

j. Ambassador Chicago Hotel: 1301 North State Parkway, Chicago, IL 60610;

k. Hotel Lincoln: 1816 North Clark Street, Chicago, IL 60614;

l. Hyatt Place Chicago South: 5225 S. Harper Avenue, Chicago, IL 60615;

m. Hyatt Place-Midway: 6550 S. Cicero Avenue, Chicago, IL 60638;

n. Hyatt House Evanston: 1515 Chicago Avenue, Evanston, IL 60201;

o. Hyatt House Chicago – Medical/University District: 1835 W Harrison Street, Chicago, IL 60612;

p. Hyatt Place Chicago – Medical/University District: 1835 W Harrison Street, Chicago, IL 60612; and

q. Hyatt Regency Chicago: 151 East Wacker Drive, Chicago, IL 60601.

(collectively the "Hotels"),

8.      All the Hotels are operated as a single enterprise, under the common control of the Defendants. Specially, the Hotels are engaged in related activities, share common ownership, and have a common business purpose:

a. The Hotels are advertised jointly as a common enterprise on Defendants' website located at https://www.hyatt.com/explore-hotels. *See* **Exhibit A.**

b. Defendant HYATT HOTEL CORPORATIONS owns and operates the Hotels.

c. Defendant HYATT HOTEL CORPORATIONS is a public company.

d. The Hotels share the common trade name Hyatt.

e. The Hotels share a common loyalty program which can be joined at https://world.hyatt.com/content/gp/en/enroll.html?icamp=who_enroll_overview.

   *See* **Exhibit B – Hyatt Loyalty Program.**

f. The Hotels share a common careers page located at https://careers.hyatt.com/en-US/careers/. *See* **Exhibit C – Hyatt Careers.**

9.      CHICAGO ATHLETIC ASSOCIATION is a hotel that is part of the Hyatt Brand, The Unbound Collection. *See* **Exhibit D – Chicago Athletic Association Listed in Hyatt Homepage.** *See also* **Exhibit E – Chicago Athletic Association Homepage with Logo of Hyatt Unbound Collection.**

10.    Defendant TR CHICAGO MANAGEMENT LLC d/b/a CHICAGO ATHLETIC ASSOCIATION is a domestic limited liability corporation with a principal place of business located at 150 N. Riverside Plaza, 14th Floor, Chicago, IL 60606, and an address for service of process located at Illinois Corporation Service Company, 801 Adlai Stevenson Drive, Springfield, IL 62703.

11.    Defendant JOIE DE VIVRE HOSPITALITY, LLC d/b/a CHICAGO ATHLETIC ASSOCIATION is a foreign limited liability corporation with a principal place of business located at 150 N. Riverside Plaza, 14th Floor, Chicago, IL 60606, and an address for service of process located at Illinois Corporation Service Company, 801 Adlai Stevenson Drive, Springfield, IL 62703.

12.    Defendant HYATT HOTEL CORPORATIONS is an Illinois business corporation that owns and operates Hyatt branded hotels. It has a principal place of business and an address for service of process located at 150 N Riverside Plaza, Chicago, IL 60606.

13.    Upon information and belief, Defendants JOHN DOE CORPORATIONS 1-100 are individual unknown corporations operating hotels throughout Chicago, Illinois. JOHN DOE CORPORATIONS 1-100 are direct subsidiaries and/or have their operations controlled by Defendant HYATT HOTEL CORPORATIONS. Defendant HYATT HOTEL CORPORATIONS exercise control over the employment terms and conditions of those working for Defendants JOHN DOE CORPORATIONS 1-100. Defendant HYATT HOTEL CORPORATIONS has and exercises the power and authority to determine the rate and method of pay, determine work schedules, maintain employment records, and otherwise affect the quality of employment of employees of JOHN DOE CORPORATIONS 1-100. Defendant HYATT HOTEL CORPORATIONS exercises functional control over the business and financial operations of all JOHN DOE CORPORATIONS

1-100 and have authority over all employee-related decisions including payroll, personnel, and wage and hour policies concerning employees. While each individual hotel comprising JOHN DOE CORPORATIONS 1-100 is ultimately owned by a separate corporation, HYATT HOTEL CORPORATIONS and JOHN DOE CORPORATIONS 1-100 operate their business and hotels as a single integrated enterprise.

14.     At all relevant times, the Corporate Defendants were and continue to be an "enterprise engaged in commerce" within the meaning of the FLSA.

15.     At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs and Class members was directly essential to the business operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

16.     Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt employees, including but not limited to front desk agents, engineers, housekeepers, bellman, porters, bartenders, and servers among others, employed by Defendants throughout Chicago, Illinois in hotels owned and operated by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (herein, "FLSA Collective Plaintiffs").

17.     At all relevant times, Plaintiff and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them their proper wages, including overtime, due to time shaving. Defendants also failed to reimburse Plaintiff for uniforms he was forced to purchase. A subclass of tipped employees has a

claim for illegally retained gratuities. The claims of Plaintiff stated herein are essentially the same as those of other FLSA Collective Plaintiffs.

18.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to §16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## CLASS ACTION ALLEGATIONS

19.     Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt employees, including but not limited to front desk agents, engineers, housekeepers, bellman, porters, bartenders, and servers among others, employed by Defendants throughout Chicago, Illinois in hotels owned and operated by Defendants on or after the date that is five years before the filing of the Complaint (the "Class Period").

20.     All said persons, including Plaintiff, are referred to herein as the "Class." The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class Member may also be determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

21.     The proposed Class is so numerous such that a joinder of all Members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown because the facts on which the calculation of that number rests presently within the sole control of Defendants, there is no doubt

7

that there are more than forty (40) Members of the Class. The Class further includes a subclass of tipped employees ("Tipped Subclass") who also number more than forty (40). Plaintiff SANDERS is a member of both the Class and the Tipped Subclass.

22.     Plaintiff's claims are typical of those claims, which could be alleged by any member of the Class, and the relief sought is typical of the relief, which would be sought by each member of the Class in separate actions. All Class Members were subject to the same corporate practices of Defendants, as alleged herein, of (i) unpaid wages, including minimum wages and overtime, due to an invalid tip credit; (ii) unpaid wages, including overtime, due to time shaving; (iii) reimbursement for uniforms; (iv) illegally retained gratuities; (v) failing to provide Class Members with proper wage statements with every payment of wages; and (vi) failing to properly provide wage notices to Class Members, at date of hiring and dates of all wage changes, per requirements of IWPCA.

23.     Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and Class Members sustained similar losses, injuries and damages arising from the same unlawful policies, practices, and procedures.

24.     More specifically, with regard to Plaintiff and the Tipped Subclass, Defendants also failed to pay them the proper minimum wage and overtime because Defendants were not entitled to claim any tip credit because they failed to meet statutory requirements under IWPCA. Plaintiff and the Tipped Subclass suffered from Defendants' failure to pay minimum wage and their proper overtime due to Defendants' invalid tip credit allowance because Defendants (i) failed to properly provide tip credit notice at hiring and annually thereafter; (ii) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for hours

exceeding twenty (20%) of the total hours worked each workweek; (iii) illegally retained tips; (iv) failed to provide proper wage statements clearly indicating tip credit allowance for each payment period; and (v) failed to accurately keep track of daily tips earned and maintain records thereof.

25.     Defendants illegally retained gratuities because Defendants kept a portion of the service charges, and director Julia Paprocka pocketed two percent (2%) of the banquet tips.

26.     Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices, and procedures.

27.     Plaintiff is able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

28.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against a corporate defendant. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing

the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

29.     Defendants and other employers throughout the state violate the IWPCA. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

30.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a)  Whether Defendants employed Plaintiff and the Class Members within the meaning of the IWPCA;

b)  What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay Plaintiff and the Class Members properly;

c) At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiff and the Class Members for their work;

d) Whether Defendant properly notified Plaintiff and the Class Members of their hourly rates and overtime rates;

e) Whether Defendants properly compensated Plaintiff and Class Members the proper minimum wage under IWPCA;

f) Whether Defendants properly compensated Plaintiff and Class Members the proper overtime compensation at one-and-one-half times their straight time base hourly rates for all hours worked in excess of forty (40) each workweek under IWPCA;

g) Whether Defendants properly provided notice to all tipped employees that Defendants were taking a tip credit;

h) Whether Defendants accurately tracked the amount of tips earned each day and maintained records thereof;

i) Whether Defendants caused tipped employees to engage in non-tipped duties exceeding two (2) hours or twenty percent (20%) of each shift;

j) Whether Defendants provided proper wage statements informing (i) tipped employees of the amount of tip credit taken for each payment period, and (ii) all non-exempt employees of information required to be provided on wage statements under IWPCA;

k) Whether Defendants paid Plaintiff and Class Members for all hours worked given Defendants' policy of time shaving;

l) Whether Defendants reimbursed Plaintiff and Class Members for their uniforms;

11

m) Whether Defendants retained any portion of the gratuities from their tipped employees;

n) Whether Defendants provided wage and hour notices to Plaintiff and the Class Members at date of hiring, as required under IWPCA; and

o) Whether Defendants provided proper wage and hour statements to Plaintiff and the Class Members, as required under IWPCA.

## STATEMENT OF FACTS

*Wage and Hour Violations:*

31.     Plaintiff SANDERS worked at the Chicago Athletic Association – In the Unbound Collection by Hyatt located at 12 S Michigan Ave, Chicago, IL 60603 from in or around June 2015 to in or around October 2017 as a lead bartender. From in or around October 2017 Plaintiff was demoted to on-call server. Plaintiff's employment was terminated in or around March 2020.

32.     From the start of his employment until in or around October 2017, Plaintiff SANDERS worked thirty (30) to forty-two (42) hours per week. From in or around October 2017 until the end of his employment Plaintiff SANDERS worked eleven (11) to fifteen (15) hours per week. FLSA Collective Plaintiffs, and Class Members were scheduled to work a similar number of hours per week.

33.     Throughout his entire employment with Defendants, Plaintiff SANDERS was paid seven dollars and sixty-nine cents ($7.69) per hour and tips. Plaintiff SANDERS was not paid at the proper overtime rate. Plaintiff SANDERS was paid at an overtime rate of eleven dollars fifty-four cents ($11.54) per hour reflecting one and half times his paid rate. Based on the tip credit Plaintiff SANDERS should have been paid overtime at one and a half times the actual minimum wage minus any applicable credit or allowance. At all times, Plaintiff SANDERS was paid bi-

weekly checks. FLSA Collective Plaintiffs, and Class Members were paid similar rates and incorrect overtime rates by bi-weekly checks.

34. At all relevant times, Plaintiff SANDERS, FLSA Collective Plaintiffs, and Class Members regularly worked over forty (40) hours per week, but Defendants failed to pay them the proper overtime premium rate of one-and-half times of their regular hourly rate for each hour exceeding forty (40) hours per workweek in violation of the FLSA and IPWCA.

35. Plaintiff, a subclass of FLSA Collective Plaintiffs, and the Tipped Subclass were paid below the minimum wage and not paid proper overtime at an invalid "tip credit" minimum wage. With respect to Plaintiff, a subclass of FLSA Collective Plaintiffs, and the Tipped Subclass, Defendants were not entitled to claim any tip credit allowance under IWPCA because Defendants (i) failed to properly provide tip credit notice at hiring and annually thereafter; (ii) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for hours exceeding twenty (20%) of the total hours worked each workweek; (iii) illegally retained tips; (iv) failed to provide proper wage statements clearly indicating tip credit allowance for each payment period; (v) failed to provide proper notice because the overtime rates were wrong; and (vi) failed to accurately keep track of daily tips earned and maintain records thereof.

36. Plaintiff SANDERS was required to engage more than twenty percent (20%) of his working time in non-tipped related activities, including setting up silverware, setting up the center pieces, folding tablecloths, setting up and putting away tables, breaking down the beer bins, sanitizing the bars, etc. Even though Defendants required tipped employees to engage in non-tipped activities for hours exceeding twenty percent (20%) of the total hours worked each workweek, Defendants improperly claimed tip credit for all hours worked by tipped employees.

37. Throughout his employment with Defendants, Plaintiff SANDERS was not compensated for all his hours worked due to Defendant's time shaving policy. Plaintiff SANDERS was deducted a thirty (30) minute meal break, despite that fact that he did not take such break because he was too busy and asked by Defendants to perform various tasks. FLSA Collective Plaintiffs, and Class Members similarly suffered from meal break deductions when they were not free to take breaks.

38. Throughout Plaintiff SANDERS's employment, Defendants failed to reimburse Plaintiff for his uniform costs. When Julia Paprocka became director in or around October 2017, she required Plaintiff and his co-workers pay twenty-five dollars ($25) for a jacket, ten dollars ($10) for pants, and five dollars ($5) for neckties. Before Julia Paprocka came in the uniforms were free. FLSA Collective Plaintiffs and Class Members, including the Tipped Subclass, similarly did not receive reimbursements for buying their own uniforms as required by Defendants.

39. Plaintiffs, FLSA Collective Plaintiffs, and Class Members suffered from Defendants' retention of gratuities. Defendants charged twenty-one percent (21%) for service charges but tipped employees would only get eighteen percent (18%) of the service charges. Defendants would keep three percent (3%). Clients would believe that Tipped Employees kept all twenty-one percent (21%) of the service charges. In addition, Julia Paprocka would pocket two percent (2%) of the banquet tips.

40. At all relevant times, Defendants failed to provide Plaintiff and Class Members with any wage and hour notices as required under IWPCA.

41. Defendants knowingly and willfully operated their business with a policy of not providing wage and hour notice to Plaintiff and Class Members as required under IWPCA.

14

42.     At all relevant times, Defendants failed to provide Plaintiff and Class Members with proper wage and hour statements as required under IWPCA.

43.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements as required under IWPCA. Defendants failed to reflect the actual number of hours worked by Plaintiff and Class Members.

*Racial Discrimination*

44.     Throughout his employment, Plaintiff SANDERS suffered from Defendants' discrimination of Plaintiff based on his race. Plaintiff is African America.

45.      After Julia Paprocka was hired as director of catering, Plaintiff SANDERS was demoted from lead bartender to on-call server simply because of his race. Plaintiff SANDERS had no issues with performance and no other reasons for being demoted other than the fact that Julia Paprocka did not like Plaintiff because he was African American. Julia Paprocka made it difficult for Plaintiff to advance in the work place because of his race.

46.     A co-worker told Plaintiff, "You're good at what you do but this new director (Julia Paprocka) doesn't want you here because you're black."

47.     When Julia Paprocka demoted Plaintiff SANDERS she stated, "I'm getting rid of the lead bartender position for the banquet department." However, two (2) months later, she hired a Caucasian man to take Plaintiff's lead bartender position.

48.     The demotion from Julia Paprocka caused Plaintiff SANDERS to suffer from a sharp decrease in hours worked despite Plaintiff's ability and desire to continue his scheduled thirty (30) to forty-two (42) hour work schedule. Without reason and against his wishes, Plaintiff was now working only eleven (11) to fifteen (15) hours per week. Plaintiff was put at the bottom

of the shift scheduling after Julia Paprocka arrived. In this manner, Plaintiff was constructively terminated.

49. Ultimately, Plaintiff SANDERS suffered financially as his wages fell from one thousand seven hundred dollars ($1,700) gross bi-weekly before Julia Paprocka became director, to five hundred dollars ($500) gross bi-weekly after Julia Paprocka became director.

50. Julia Paprocka discriminated against all African American employees. Ultimately Julia Paprocka got rid of all African American workers. There were nine (9) African American banquet servers when Julia Paprocka was hired. These co-workers faced similar deductions in hours worked simply because they were African American.

51. Despite Plaintiff SANDERS and his co-workers complaining to human resources about the discrimination they faced, Defendants did nothing and Julia Paprocka continued to against discriminate them.

52. Defendants violated IHRA when they caused Plaintiff to suffer from adverse employment actions because he was African American.

53. Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collectives Plaintiffs, and Class Members in this litigation and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

### COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS ACT ON BEHALF OF PLAINTIFF AND FLSA COLLECTIVE PLAINTIFFS

54. Plaintiff realleges and incorporates all the foregoing paragraphs as if fully set forth herein.

55.     At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).

56.     At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

57.     At all relevant times, each Corporate Defendant had gross annual revenues in excess of $500,000.00.

58.     At all relevant times, Defendants had a policy and practice of refusing to pay Plaintiff and FLSA Collective Plaintiffs for all hours, including overtime, due to Defendants' policy of time shaving.

59.     At all relevant times, Defendants had a policy and practice of failing to reimburse Plaintiff MORAN and FLSA Collective Plaintiffs, including the Tipped Subclass, for their tools of the trade maintenance costs.

60.     At all relevant times, Plaintiff, a subclass of FLSA Collective Plaintiffs suffered from Defendants' retention of gratuities. Defendants' managers collected and pocketed all tips received.

61.     Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of the Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

62. Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

63. As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

64. Due to the intentional, willful and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages, including overtime, due to time shaving; reimbursements for tools of the trade maintenance; damages representing disgorgement of illegally retained gratuities; plus an equal amount as liquidated damages.

**COUNT II**

**<u>VIOLATION OF THE ILLINOIS WAGE PAYMENT AND COLLECTION ACT ON</u>**

**<u>BEHALF OF PLAINTIFF AND CLASS MEMBERS</u>**

65. Plaintiff realleges and incorporates all the foregoing paragraphs as if fully set forth herein.

66. At all relevant times, Plaintiff and Class Members were employed by the Defendants within the meaning of IWPCA 820 ILCS 115/1 and 2.

67. Defendants were not entitled to claim any tip credits from Plaintiff and the Tipped Subclass members under IWPCA 820 ILCS 105/4.

68. Defendants willfully violated Plaintiff's and Tipped Subclass members' rights by failing to pay them proper wages in the lawful amount for all hours worked under IWPCA 820 ILCS 140/3.1.

69.     Defendants willfully violated Plaintiff SANDERS's and the Class Members' rights by failing to reimburse them for their uniform costs. Defendants also deducted for an improper meal credit, in violation of IWPCA 820 ILCS 115/9.5. *See also* 56 Ill. Adm. Code 300.840.

70.     Defendants willfully violated Plaintiff and the Class Members' rights by illegally retaining gratuities in violation of IWPCA 820 ILCS 115/4.1, including through director Julia Paprocka.

71.     Defendants knowingly and willfully operated their business with a policy of not providing all non-exempt employees wage notice, at date of hiring and annually thereafter, as required under the IWPCA 820 ILCS 115/10.

72.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements as required under the IWPCA 820 ILCS 115/10. Defendants are required to provide itemized listings of deductions taken on each wage statement. Defendants failed to satisfy the requirements under the IWPCA because such tip credit allowance was never clearly included in wage statements to tipped employees for each payment period. Defendants also provided fraudulent wage statements that failed to accurately reflect the proper hours and compensation owed to Plaintiff and Class Members.

73.     Due to the Defendants' Illinois Wage Payment and Collection Act violations, Plaintiff and Class Members are entitled to recover from Defendants damages for unpaid wages, including minimum wages and overtime, due to an invalid tip credit; unpaid wages, including overtime, due to time shaving; reimbursement for uniforms; illegally retrained gratuities; reasonable attorneys' fees; liquidated damages; statutory penalties; and costs and disbursements of the action, pursuant to the Act.

**COUNT III**

**RACIAL DISCRIMINATION IN VIOLATION OF THE**

**ILLINOIS HUMAN RIGHTS ACT**

74.     Plaintiff realleges and incorporates all the foregoing paragraphs as if fully set forth herein.

75.     The Illinois Human Rights Act ("IHRA") provides: "To secure for all individuals within Illinois the freedom from discrimination against any individual because of his or her race, color, religion, sex, national origin, ancestry, age, order of protection status, marital status, physical or mental disability, military status, sexual orientation, pregnancy, or unfavorable discharge from military service in connection with employment…." 775 ILCS 5/1-102.

76.     Plaintiff is an employee and qualified persons within the meaning of IHRA and Defendants are covered employers under IHRA. *See* 775 ILCS 5/2-101.

77.     Defendants willfully violated the NYSHRL by terminating demoting and causing Plaintiff to suffer adverse employment actions, including demotion, by Defendants on the basis of his race, in violation of IHRA.

78.     Defendants' conduct was willful or undertaken with malice and reckless disregard of Plaintiff's protected rights under IHRA.

79.     As a direct and proximate result of said discrimination. Plaintiff SANDERS seeks back pay; front pay; compensatory damages; punitive damages; and attorneys' fees and costs, as provided for under IHRA.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff on behalf of himself, FLSA Collective Plaintiffs, and Class Members, respectfully request that this Court grant the following relief:

a.  A declaratory judgment that the practices complained of herein are unlawful under the FLSA, IWPCA, and IHRA;

b.  An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies, and patterns set forth herein;

c.  An award of unpaid minimum and overtime wages due to Defendants' invalid tip credit policy under the IWPCA;

d.  An award of unpaid regular and overtime compensation resulting from Defendants' policy of time shaving due under the FLSA and the IWPCA;

e.  An award of unpaid wages due to Defendants' failure to reimburse tools of the trade/uniform costs under the FLSA and IWPCA;

f.  An award equal to the amount of the improperly retained tips withheld by Defendants;

g.  An award of statutory penalties as a result of Defendants' failure to comply with the IWPCA wage notice and wage statement requirements;

h.  An award of front pay and back pay due under IHRA;

i.  An award of compensatory damages and punitive damages due under IHRA;

j.  An award of prejudgment and postjudgment interest, costs, and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

k.  Designation of Plaintiff as Representatives of the FLSA Collective Plaintiffs;

l.  Designation of this action as a class action pursuant to F.R.C.P. 23;

m.  Designation of Plaintiff as Representatives of Class; and

n.  Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.


Dated:  April 5, 2022

                              Respectfully submitted,

                              LEE LITIGATION GROUP, PLLC

               By:     /s/ C.K. Lee
                              C.K. Lee, Esq.
                              148 West 24th Street, 8th Floor
                              New York, NY 10011
                              Tel.: (212) 465-1188
                              Fax: (212) 465-1181
                              *Attorneys for Plaintiff,*
                              *FLSA Collective Plaintiffs, and the Class*